DAVIS, Judge.
L.F. ("Respondent-mother"), the mother of the juveniles I.V.F. and J.L.F-S. ("Isabel" and "Joyce"),[1] and L.S. ("Respondent-father"), the father of Joyce, appeal from the trial court's orders ceasing reunification efforts and terminating their parental rights.[2] After a thorough review of the record and applicable law, we affirm both orders.
Factual and Procedural Background
Respondent-mother has a history with Child Protective Services ("CPS") due to mental health issues. On 22 August 2011, the Cumberland County Department of Social Services ("DSS") obtained non-secure custody of Isabel and filed a petition alleging that she was a neglected and dependent juvenile. The petition alleged that DSS received a CPS referral on 18 August 2011 after Respondent-mother was admitted to Cape Fear Valley Behavioral Health ("Behavioral Health") for symptoms of paranoia and was released the following day. Respondent-mother was admitted to Behavioral Health again on 20 August 2011. She was discharged and readmitted later that same day after law enforcement brought her to the hospital. The petition further alleged that Isabel's biological father was incarcerated in the state of Idaho.
The trial court entered an order adjudicating Isabel dependent based on stipulations of the parties on 18 November 2011. In its disposition order entered 8 January 2012, the trial court ordered Respondent-mother to obtain a psychological evaluation and a parenting assessment and to follow all recommendations. The trial court further ordered her to complete age-appropriate parenting classes, continue counseling, take her medications as prescribed, and comply with the recommendations of her Family Services Case Plan. Respondent-mother was permitted one hour of supervised visitation per week. The trial court later ordered her to complete a substance abuse assessment and obtain a neuropsychological evaluation.
By late 2013, Respondent-mother had completed parenting classes and a neuropsychological evaluation, was attending visitation and individual therapy, and had attended several sessions of therapy with Isabel. However, based on the recommendation of Isabel's therapist the trial court ceased her visitation with the child on 6 June 2013.
Respondent-mother gave birth to Joyce on 19 January 2014. DSS filed a juvenile petition on 24 February 2014 alleging that Joyce was dependent and that Respondent-father was her biological father. The petition further alleged that Respondent-mother was involuntarily committed to Behavioral Health on 22 February 2014 after law enforcement observed her exhibiting erratic behavior and incoherent speech. DSS took Joyce into non-secure custody.
On 5 May 2014, the trial court entered an order adjudicating Joyce as a dependent juvenile based on Respondent-mother's stipulations. The order also allowed Respondent-mother two hours of supervised visitation per week. Respondent-father was served with the juvenile petition but was not present for the hearing. In its disposition order entered 6 June 2014, the trial court ordered Respondent-mother to complete a Child and Family Evaluation, continue to attend individual therapy and medication management, and to follow all recommendations.
Respondent-father was determined to be Joyce's biological father in either September or November 2014 and was notified of the results in December 2014. He never contacted the social worker to enter into a case plan or to inquire about Joyce's well-being.
The juvenile cases were consolidated and the trial court held a permanency planning hearing on 13 March 2015 and 9 April 2015. In an order entered 12 May 2015, the trial court relieved DSS of reunification efforts with Respondents and changed the permanent plan to adoption with a concurrent plan of custody with court-approved caretakers. Respondents filed timely written notices of appeal from the order ceasing reunification efforts.
On 28 March 2016, DSS filed a petition to terminate Respondents' parental rights on the grounds of neglect, failure to make reasonable progress, failure to pay reasonable cost of care, and abandonment. As to Respondent-mother, DSS alleged the additional ground of dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6)-(7) (2017). A hearing was held 28 November 2016, and on 3 April 2017 the trial court entered an order terminating Respondent-mother's parental rights on the grounds of neglect, failure to make reasonable progress, and dependency. The court also terminated Respondent-father's parental rights on the grounds of neglect, failure to make reasonable progress, failure to pay reasonable cost of care, and abandonment. Respondents timely appeal from the 12 May 2015 order ceasing reunification efforts and the 3 April 2017 order terminating their parental rights.
Analysis
The attorneys for both Respondent-mother and Respondent-father have filed "no-merit" briefs stating that after a conscientious and thorough review of the record on appeal they are unable to find any issue of merit on which to base an argument for relief. Pursuant to North Carolina Rule of Appellate Procedure 3.1(d), they request that this Court conduct an independent examination of the case. See N.C. R. App. P. 3.1(d). In accordance with Rule 3.1(d), each attorney wrote a letter to their respective client on 8 September 2017 advising them of the attorney's inability to find error and of the parent's right to file their own written arguments directly with this Court. Respondents have not filed their own written arguments and a reasonable time period for doing so has passed.
In addition to seeking review pursuant to Rule 3.1(d), the attorneys direct our attention to three potential issues: (1) whether the trial court erred in ceasing reunification efforts and changing the permanent plan to adoption; (2) whether the trial court erred in concluding that grounds exist to terminate Respondents' parental rights; and (3) whether the trial court abused its discretion in determining that it would be in the best interests of the children to terminate Respondents' parental rights. The attorneys acknowledge, however, that the trial court's findings of fact support at least one ground for termination and the trial court did not abuse its discretion in determining that termination was in the best interests of the children. See N.C. Gen. Stat. §§ 7B-1110, -1111 (2017).
After conducting a thorough review of the record, we are unable to identify any basis for determining that the trial court committed reversible error. First, the trial court made appropriate findings of fact supported by competent evidence in its 12 May 2015 permanency planning order. In turn, these findings supported the court's conclusion that reunification efforts should cease. See N.C. Gen. Stat. § 7B-507(b)(1) (2013).[3]
Regarding Respondent-mother, the trial court found that she had made minimal progress in remedying the conditions that brought the juveniles into care and failed to take appropriate action to reunite with the juveniles. Specifically, the court found that Respondent-mother displayed a consistent pattern of behavior in which she did "reasonably well for brief periods of time followed by mental or behavioral breakdowns" and was incapable of caring for herself or the juveniles during these episodes. The trial court further found that Respondent-mother had been admitted to Behavioral Health on numerous occasions, including several times within the previous 12 to 18 months; that she would not take her medication consistently, but rather would take it for short periods before stopping and rapidly decompensating; and that she resisted in-depth analysis of her mental health issues by continuing to change therapists.
As for Respondent-father, the trial court found that he had not been involved in Joyce's life and had only visited her once in 2014; that he did little to bond with Joyce and made no attempt to contact the social worker to inquire into his daughter's well-being despite knowing that she was in DSS custody; and that he failed to make efforts to explain his absence from the case. The court also found that Respondent-father's roaming lifestyle was not conducive to child-rearing in that he did not have a home for himself or Joyce; that he had a history of unstable housing and homelessness; and that he had failed to alleviate the conditions that led to the child's removal.
Thus, these findings supported the trial court's ultimate finding and conclusion that further reunification efforts "would clearly be futile and inconsistent with the juveniles' health, safety, and need for a safe, permanent home within a reasonable period of time" and that "such efforts should be ceased." Therefore, the trial court did not abuse its discretion in changing the permanent plan to adoption.
Next, the trial court's 3 April 2017 termination of parental rights order contains sufficient findings, supported by clear, cogent, and convincing evidence, to support the conclusion that grounds existed to terminate Respondents' parental rights. In support of its conclusion that grounds existed to terminate Respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), the trial court made the following undisputed finding of fact:
51. That the Court has previously found, and finds again on today's date, that the Respondent Mother has psychotic breaks that are recurring in nature. When the episodes occur, the Respondent Mother cannot care for herself or the juveniles. That the timing of the psychotic breaks is unpredictable, and they are likely to continue into the foreseeable future. When these episodes occur, the Respondent Mother becomes angry, bizarre, aggressive, and combative. Her reasoning is not clear inasmuch as she is very angry and paranoid at these times. She poses a risk to herself and those around her. For example, the Respondent Mother threatened at one time to burn a house down with the juvenile [Joyce] in it. This occurred just before the Respondent Mother was admitted to a mental health facility. For these reasons, the Respondent Mother is not capable of providing for herself or the juveniles.
The trial court also found that although Respondent-mother was stable from 2012 to February 2014, she "has a consistent pattern of behavior wherein she will do reasonably well for brief periods of time followed by mental or behavioral breakdowns[;]" that there has not been any substantial change since the trial court ceased reunification efforts; that the failure of Respondent-mother to adequately address in a timely fashion the issues that led to the removal of the children rendered her incapable of providing adequate care and supervision of the children; and that Respondent-mother lacked an alternative child care placement.
These findings support the conclusion that grounds existed to terminate Respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) because Respondent-mother was "incapable of providing for the proper care and supervision" of the children and "there [was] a reasonable probability that such incapability [would] continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6). By itself, the finding of this statutory ground supported termination of Respondent-mother's parental rights. See In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination." (citation omitted) ).
Regarding Respondent-father, the trial court's findings demonstrate that he was not involved with Joyce at the time the juvenile petition was filed, had only sporadically been involved in his daughter's life, and had only visited her once in March 2014. Respondent-father never contacted the social worker to inquire into the well-being of Joyce or to enter into a Family Services Case Plan after learning in December 2014 he was her biological father. Although he gave some money for the cost of Joyce's care, the trial court found that Respondent-father only provided financial support when he believed he would be incarcerated for failing to do so. The court further found that Respondent-father withheld his love and care from Joyce, never contacted her by sending cards, letters, or gifts, and willfully failed to take advantage of the opportunity to display filial affection. Therefore, we hold the trial court's findings of fact support its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) to terminate Respondent-father's parental rights based on willful abandonment.
Finally, the trial court made appropriate findings in determining that termination of Respondents' parental rights was in the best interests of Isabel and Joyce. See N.C. Gen. Stat. § 7B-1110(a). Accordingly, we affirm both the trial court's 12 May 2015 order ceasing reunification efforts and its 3 April 2017 order terminating Respondents' parental rights.
Conclusion
For the reasons stated above, we affirm both the trial court's 12 May 2015 and 3 April 2017 orders.
AFFIRMED.
Report per Rule 30(e).
Judges CALABRIA and TYSON concur.

Pseudonyms are used to protect the juveniles' privacy and for ease of reading.

The biological father of Isabel is not a party to this appeal.

As the parties observe, the General Assembly amended N.C. Gen. Stat. § 7B-507 in 2015, and cessation of reunification is now governed by other statutory provisions. However, those amendments became effective after entry of the order ceasing reunification efforts in this case. Accordingly, for purposes of this opinion, citation is made to the statute applicable at the time of entry of the order.